NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 18-68

BRANDON WAYNE OSBORN

VERSUS

JUANITA HOWINGTON

**********

APPEAL FROM THE
SEVENTH JUDICIAL DISTRICT COURT
PARISH OF CONCORDIA, NO. 50837 A
HONORABLE KATHY A. JOHNSON, DISTRICT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Phyllis M. Keaty, and
Candyce G. Perret, Judges.

AFFIRMED.

Richard Tracy Conrad, III
Wells Marble & Hurst, PLLC
300 Concourse Blvd, Suite 200
Ridgeland, MS 39157
P. O. Box 131
Jackson, MS 39205
(601) 605-6900
COUNSEL FOR PLAINTIFF-APPELLANT:
    Brandon Wayne Osborn

**Philip Allan LeTard, Sr.**
**Attorney at Law**
**109 Carter Street**
**P. O. Box 187**
**Vidalia, LA 71373**
**(318) 336-8990**
**COUNSEL FOR DEFENDANT-APPELLEE:**
    **Juanita Howington**

**PERRET, Judge.**

This appeal originates from a judgment dissolving a writ of attachment obtained by Plaintiff-Appellant, Brandon Wayne Osborn ("Mr. Osborn"), against the Defendant-Appellee, Juanita Howington ("Ms. Howington"), who was also awarded $2,500.00 in attorney's fees. The issues on appeal are whether the attachment was rightfully dissolved and whether the trial court erred in awarding Ms. Howington attorney's fees and court costs, or, alternatively, whether those fees are excessive. For the following reasons we affirm the trial court's judgment.

**Facts and Procedural Background:**

Mr. Osborn filed a Petition for Writ of Attachment and a Petition for Revindicatory Action and Damages on August 1, 2017. Mr. Osborn's Petition for Revindicatory Action and Damages is not before us.[1] Before this Court is Mr. Osborn's Petition for Writ of Attachment. The Petition for Writ of Attachment alleges that Ms. Howington conspired with her daughter, Keisha, to wrongfully transfer certain funds that comprise a part of Keisha's bankruptcy estate from Keisha to Ms. Howington. Mr. Osborn asserts that Ms. Howington continues to hold these funds beyond the reach of himself and the bankruptcy trustee and, as a result, he has suffered damages as sought in his revindicatory action. Mr. Osborn alleges that Ms. Howington is about to sell her home located in Ferriday, Louisiana, "which property is connected to the money Keisha fraudulently transferred to her" before Mr. Osborn can obtain a judgment against Ms. Howington, and that she is doing so in order to place the money "beyond the reach

---

[1] The Petition for Revindicatory Action seeks damages allegedly caused by Ms. Howington's "conspiracy to commit fraud and conversion, and for her continuing fraudulent activity in secreting, converting or otherwise wrongfully diverting funds belonging to [her daughter] Keisha's bankruptcy estate and thereby, defrauding [Mr. Osborn] in the event of a judgment in his favor in the Madison County action." Mr. Osborn asserts that Ms. Howington's actions have caused him "emotional distress, stress, mental anguish, worry, lost wages, attorney['s fees] and other general and special damages in the premises." Mr. Osborn has claims against Keisha for damages associated with defamation in Madison County, Mississippi.

of her creditors, including" Mr. Osborn.  Mr. Osborn asserts a writ of attachment is necessary to protect his interests as a judgment creditor in the event he is successful in his revindicatory action against Ms. Howington.  A writ of attachment was issued on August 3, 2017, and bond set by the trial court at $7,500.00.  Mr. Osborn asserts in brief that he paid the bond on August 18, 2017.[2]

Mr. Osborn amended both petitions on September 5, 2017, and Ms. Howington responded by filing a Petition to Release Attachment and a Rule to Dissolve Attachment four days later.  Ms. Howington's Petition to Release Attachment asserted that Mr. Osborn does not have a claim to funds that are potentially the property of Keisha's bankruptcy estate, and that La.Code Civ.P. art. 3544 requires security for a writ of attachment in the amount of the plaintiff's demand, which is $500,000.00 not $7,500.00.  Ms. Howington prayed the property be released upon her furnishing bond in the amount of $7,500.00 in accordance with La.Code Civ.P. art. 3507, or alternatively, that Mr. Osborn be required to furnish bond in the amount of $500,000.00.

On the same day, the trial court set the bond on Mr. Osborn's Amended Petition for Writ of Attachment at $500,000.00, which has not been paid.  The trial court also set Ms. Howington's Rule to Dissolve Attachment for a hearing.

At the hearing, the trial court heard the testimony of Ms. Howington, elicited by the court itself, regarding the home she recently purchased, and is currently living in, in Winnsboro, Louisiana, as well as the status of her Ferriday property, to which the writ of attachment is attached.  Ms. Howington testified that the Winnsboro property has an interest only loan on it, that she is trying to sell the Ferriday property in order to pay for the Winnsboro property, and that the reason

---

[2] The record does not contain documentation of the payment of the $7,500.00 bond by Mr. Osborn.  However, the record does contain an "Order to Release Funds" of $7,500.00 "posted by the Plaintiff, Brandon Wayne Osborn" signed by the trial court on November 2, 2017.

2

for her move was to be closer to family while she undergoes chemotherapy treatment. She further testified that she has a buy/sell agreement for the Ferriday property, but that the attachment prevented the sale from going through. Ms. Howington testified that any remaining money from the sale of the Ferriday property would be put into savings or something similar.

Judgment was signed on October 19, 2017, and ordered the attachment dissolved, awarded Ms. Howington $2,500.00 for attorney's fees, as well as court costs associated with the filing of the motion to dissolve and the posting of the bond, transferred the litigation to the fifth judicial district court, and released the $7,500.00 bond posted by Ms. Howington. Mr. Osborn appeals and asserts that the attachment was wrongfully dissolved by the trial court and that the trial court erred in awarding Ms. Howington attorney's fees, or, alternatively, that those fees are excessive. Mr. Osborn appeals only that portion of the judgment dissolving the attachment and awarding Ms. Howington attorney's fees.[3]

**Discussion:**

A writ of attachment may be dissolved by contradictory motion "unless the plaintiff proves the grounds upon which the writ was issued." La.Code Civ.P. art. 3506. Contrary to Mr. Osborn's assertion, the burden of proof at the hearing on the motion to dissolve the attachment is on the plaintiff to prove the grounds upon which the attachment was issued. *See Chas. A. Kaufman Co. v. Gregory*, 244 La. 766, 154 So.2d 392 (1963); *Yorkwood Sav. and Loan Ass'n v. Thomas*, 379 So.2d 798 (La.App. 4 Cir. 1980). Specifically, the supreme court in *Chas. A. Kaufman Co.*, 154 So.2d at 394-95 (citations omitted) explained:

---

[3] This Court previously issued an Order to show cause why the case should not be dismissed for having been taken from an interlocutory judgment as to venue. That Order was recalled after Mr. Osborn asserted the appeal is limited to those portions of the judgment which dissolve the attachment and award attorney's fees, and that he is not appealing the venue change.

3

Formerly the order and burden of proof upon the trial of a motion to dissolve required the defendant (the party moving for the dissolution) to proceed with the presentation of his evidence in an effort to rebut the prima facie case existing in favor of plaintiff by virtue of plaintiff's petition, the supporting affidavits and the order granting the attachment. Failure to rebut the prima facie case resulted in the writ of attachment being maintained.

This order of proof and the burden of proof formerly observed at the trial of a motion to dissolve an attachment have been changed by the enactment of Article 3506 of the LSA-Code of Civil Procedure which provides:

'The defendant by contradictory motion may obtain the dissolution of a writ of attachment or of sequestration, unless the plaintiff proves the grounds upon which the writ was issued.'

Under this new Code of Civil Procedure article it readily appears that the filing by defendant of a contradictory motion to dissolve the attachment obliges the party who has petitioned for and obtained the issuance of the attachment to proceed at the trial of the motion to dissolve. He must at that time discharge the burden of proof by establishing the facts alleged as grounds for the issuance of the writ of attachment. Failure to discharge this burden would entitle the mover to an order of dissolution.

Therefore, it is Mr. Osborn's burden to prove that the evidence clearly shows his right to the attachment "existed at the time the writ was issued." *Am. Steel Bldg. Co. v. Brezner*, 158 So.2d 623, 629 (La.App. 3 Cir. 1963). Additionally, "even though the surrounding circumstances at the time the writ issues may reasonably seem to justify the attachment; the attachment will not be sustained if, on trial of the motion to dissolve it, the evidence shows that in fact the statutory ground for the attachment did not exist." *Id*. at 629-30.

Mr. Osborn sought the present writ of attachment under La.Code Civ.P. art. 3541, which pertinently provides, "A writ of attachment may be obtained when the defendant: . . . . (3) Has converted or is about to convert his property into money or evidences of debt, with intent to place it beyond the reach of his creditors[.]"

In the current case, the trial court did not provide detailed oral or written

4

reasons for its ruling. However, the hearing transcript indicates that the trial court had two reasons for dissolving the attachment. First, the trial court concluded that Mr. Osborn did not meet his burden of proving that the attachment was properly granted. Second, the trial court explained that dissolving the attachment was proper because the court had increased the bond and bond was never posted. We agree.

The trial court's finding that Mr. Osborn did not prove the attachment was properly granted is a factual finding subject to the manifest error standard of review on appeal. *Teche Elec. Supply, Inc. v. D.W. William, Inc.*, 00-1139 (La.App. 3 Cir. 1/31/01), 780 So.2d 474. On the other hand, the trial court's determination that the attachment is dissolved for the failure to post bond requires the application of La.Code Civ.P. arts. 3544 and 3501. Errors of law and questions of law are reviewed by the appellate court under the de novo standard of review. *Land v. Vidrine*, 10-1342 (La. 3/15/11), 62 So.3d 36.

The trial court found that Mr. Osborn failed to meet his burden of proving the attachment was properly granted. Mr. Osborn asserts that Ms. Howington's testimony that a buy/sell agreement for the Ferriday property exists is proof that she is attempting to convert this asset into money. But, Mr. Osborn must also prove Ms. Howington is converting this asset "with the intent to place it beyond the reach of [her] creditors[.]" La.Code Civ.P. art. 3541(3).

> In order to prove fraudulent intent, the acts and declarations of the debtor, as well as the surrounding circumstances, may be shown, since intent, which is subjective, can only be proved by objective signs. It is well settled that an actual fraudulent intent must exist on the part of the debtor. Mere appearances are not sufficient, even though the conduct of the debtor may indicate an intent to defraud.[4]

*Douglas Pub. Serv. Corp. v. Leon*, 200 So. 21, 22-23 (La.1941).

---

[4] *Douglas Public Service Corp.*, 200 So. 21, discussed the requirement of intent in reference to both subsections (2) and (3) of Louisiana Code of Practice article 240, of which subsection (3) is now substantially reproduced in La.Code Civ.P. art. 3541(A)(3).

At the hearing, the trial court heard argument regarding Mr. Osborn's allegations that Ms. Howington participated in a fraud of the bankruptcy court, which allegedly caused Mr. Osborn to sustain damages. Copies of the petitions involving the fraud allegations in the bankruptcy court are part of the record.

Ms. Howington testified that she is trying to sell the Ferriday property in order to pay for the interest only loan on the Winnsboro property, and that the reason for her move was to be closer to her family while she undergoes chemotherapy treatment. Although Mr. Osborn suggests he was not given the opportunity to put on proof in support of the attachment, a reading of the transcript shows that, despite the fact that the trial court moved the hearing along, Mr. Osborn's counsel did not make any attempt to inform the court of additional evidence he had in support of the attachment and that he was given an opportunity to do so.

The trial court was not convinced that Ms. Howington is attempting to sell her Ferriday property with the intent to place it beyond the reach of Mr. Osborn, nor are we. Based on the record, we cannot say that the trial court was manifestly erroneous in finding that Mr. Osborn failed to carry his burden in proving the grounds upon which the attachment was issued.

The trial court also found that Mr. Osborn's failure to furnish bond requires the dissolution of the attachment. We agree. Mr. Osborn does not argue that he was not required to furnish an increased bond. Additionally, at the trial court level he did not argue that he was not required to furnish the increased bond, but instead argued that the Petition for Revindicatory Action did not specify an amount of damages and instead requests a more reasonable bond be set.

"The security required for the issuance of a writ of attachment shall be for the amount of the plaintiff's demand, exclusive of interest and costs." La.Code

Civ.P. art. 3544. "The applicant shall furnish security as required by law for the payment of damages the defendant may sustain when the writ is obtained wrongfully." La.Code Civ.P. art. 3501. "[A] creditor praying for a writ of attachment must, among other things, give bond before the writ is issued. . . . it has been repeatedly held that the legal prerequisites must be fully complied with under pain of nullity." *Lee v. Lee*, 38 So.2d 66, 69 (La.1948).[5]

Although Mr. Osborn's amended revindicatory action did not pray for a specified amount of damages, his amended writ of attachment set forth damages in the amount of $500,000.00. The trial court set the bond for $500,000.00, which Mr. Osborn did not furnish. After a de novo review, we find Mr. Osborn failed to furnish bond after the bond amount was increased. We agree that such failure requires the dissolution of the attachment.

Next, we must determine whether the trial court properly awarded attorney's fees for dissolving the attachment or whether the amount awarded was excessive. We review the reasonableness of attorney's fees awarded under La.Code Civ.P. art. 3506 for abuse of discretion. *See Brawley v. Montgomery*, 177 So.2d 317 (La.App. 1 Cir. 1965). If a writ of attachment was wrongfully issued, the court may allow damages: "Attorney's fees for the services rendered in connection with the dissolution of the writ may be included as an element of damages[.]" La.Code Civ.P. art. 3506.

> Where a plaintiff sues out a [sic] writ of attachment in the honest belief that it is necessary for the protection of its rights, it seems rather unfortunate that it must be held liable for the payment of damages. But the writ of attachment is an extremely harsh remedy, and, when a party makes use of this powerful legal weapon he must be ready to respond in damages if it be found that the writ was wrongfully used.

---

[5] Although *Lee* was decided under Article 245 of the Code of Practice, no substantive change was made under the new Code of Civil Procedure. La.Code Civ.P. arts. 3501 cmt (a) and 3544 cmt (a).

*Gen. Motors Acceptance Corp. v. Sneed*, 167 La. 432, 445, 119 So. 417, 445 (1928).

Mr. Osborn argues attorney's fees are not warranted because the attachment should not have been dissolved, so no attorney's fees are due, and that the amount awarded is arbitrary and without evidentiary support. In regards to the dissolution work, Ms. Howington's counsel, Mr. Philip Letard, Sr., stated at the hearing: "But, $2500 is what I've Asked the Court and that's what I charged them to ask that the petition to be dissolved[.]" Mr. Letard prepared and filed a Petition to Release Attachment as well a Rule to Dissolve Attachment, tried the rule at a hearing, and has prepared an opposition in this court. "All the work done by counsel was under the eyes of the trial judge, whose opinion as to value of services of this kind is entitled to great weight." *Douglas Pub. Serv.*, 200 So. 21 at 25. The trial court accepted $2,500.00 as a fair amount. We find no abuse of discretion in the trial court's valuation of attorney's fees.

Ms. Howington also requests this court award additional attorney's fees for appellate work. However, Ms. Howington did not file an answer to the appeal and, therefore, this issue is not properly before this court. *See* La.Code Civ.P. art. 2133; *Thibodeaux v. Kaufman Trailers, Inc.*, 12-885 (La.App. 3 Cir. 2/6/13), 108 So. 3d 1283.

**Conclusion:**

For the reasons articulated above, we affirm the judgment of the trial court. Costs of this appeal are assessed against Plaintiff-Appellant, Brandon Osborn.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.